UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRAD VANZANT,<br><br>        Plaintiff,<br><br>        v.<br><br>DEPUTY DAVE WILCOX; SGT. CHRISTOPHER CRAIG; OFFICER CASEY EGGERMAN; CPL. DANIEL COLE; OFFICER TRAVIS BALL; EFFIE REED-RODRIGUEZ; VERONICA FERRO; LT. GREENLAND; LT. CLARK; CORIZON, LLC; DEPARTMENT OF CORRECTION; OFFICER LARSEN; DR. YOUNG; N.P. POLSON; and N.P. GELOK,<br><br>        Defendants. | Case No. 1:15-cv-00118-BLW-CWD<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

On September 13, 2017, United States Magistrate Judge Candy W. Dale issued a Report and Recommendation ("Report") recommending summary judgment be granted in favor of defendants on Plaintiff Brad Vanzant's claims with two exceptions. The Report recommended that the Court: (1) deny Defendant Veronica Ferro's motion for summary judgment on plaintiff's Eighth Amendment claim; and (2) deny Defendant IDOC's motion for summary judgment on plaintiff's claim under the Americans with Disabilities

Act. *See Sept. 13, 2017 Report,* Dkt. 116. For the reasons explained below, the Court will accept and adopt the Report in part, and will reject the Report in part.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Where the parties object to a report and recommendation, this Court "shall make a de novo determination of those portions of the report which objection is made." *Id*. Where no objections are filed the district court need not conduct a *de novo* review. Rather, "the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974)).

## DISCUSSION

The Court has conducted a *de novo* review of those portions of the Report objected to by the parties. Otherwise, the Court conducted a review of the entire Report, as well as the record in this matter, for clear error.

## BACKGROUND

The factual and procedural background of this case are correctly stated in the Report, and the Court adopts the same. The Court restates a portion of relevant facts here only as necessary to help explain its decision.

Vanzant is incarcerated at the Idaho State Correctional Institution (ISCI). He filed this action in March 2015, alleging that defendants violated his constitutional rights and his rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et.*

*seq.* by denying him a wheelchair, accessible housing, and adequate pain medication.

Plaintiff arrived at ISCI on December 24, 2014 in a wheelchair-assessible van, in a wheelchair. Before that, he had been housed at Ada County Jail. During his jail stay, Vanzant had a wheelchair.

Vanzant's first stop at ISCI was Unit 7, which is where newly arriving offenders are placed for initial intake. The parties dispute how Vanzant made his way into Unit 7. Vanzant says he was wheeled into Unit 7 in a wheelchair and that he never walked at all. *See Vanzant Dep.*, Dkt. 106-13, at 32:2-6. IDOC Officer William Kilby, on the other hand, who was there to meet the Ada County transport van, reports that Vanzant walked into the unit. *Kilby Dec.*, ¶¶ 3-4, Dkt. 70-7. On summary judgment, the Court accepts Vanzant's version of the facts.

After Vanzant finished in Unit 7, the next stop was Unit 15 for "completion of the Receiving and Diagnostic Unit (RDU) process," which takes roughly 1.5 to 3 hours. *Craig Dec.*, Dkt. 70-6, ¶ 3. The RDU process includes orientation to prison rules and regulations, gathering of medical history, and an initial medical, mental health, and physical examination. *Id.* ¶ 4. Under RDU policy, "[w]hen a patient arrives from a facility, such as Ada [County Jail] with a wheelchair or a prescription for a certain medication . . . th[e] course of care will be continued for a period of seven days, during which time the patient will be evaluated by a prescribing provider, such as a physician or nurse practitioner, to assess the further course of treatment." *Ferro Dec.*, Dkt. 73-6, ¶ 8. Also under RDU policy, the evaluating health care professional can offer a wheelchair accommodation, if he or she determines the patient has a medical need for one for a

MEMORANDUM DECISION AND ORDER - 3

maximum period of five days pending review and approval by a prescribing physician. *Id.*

Vanzant was wheeled from Unit 7 to Unit 15, *Craig Dec.*, Dkt. 70-6, ¶ 5, but he reports that immediately upon his arrival into Unit 15, Defendant Effie Reed-Rodriguez took the wheelchair away. Reed-Rodriguez was one of the LPNs working in Unit 15 that day; Defendant Veronica Ferro was another LPN on duty in Unit 15.

Within Unit 15 there is a classroom (where Vanzant was delivered) and a separate "medical examination room area." *See Vanzant Dec.*, Dkt. 106-5, ¶ 62. After the classroom session was completed, Vanzant reports that Ferro and Reed-Rodriguez ordered him to walk from the classroom to the medical exam room area, which was about 25 feet away. *Id.* Vanzant said he could not walk; he was then offered a walker or crutches, which he refused. *See Vanzant Dep.*, Dkt. 106-13, at 42:18 to 43:7.

Ferro explains that she understood Vanzant could walk because an IDOC employee had informed her that Vanzant had walked into Unit 7 that day and, further, the Ada County Jail Health Services Administrator had told her that Vanzant was faking it and did not really need a wheelchair. *See Ferro Dec.*, Dkt. 73-6, ¶ 6. Ferro also reports that she provided nursing care to Vanzant roughly one year earlier and he had been able to ambulate without a wheelchair at that time. Based on all this information, Ferro said she understood Vanzant could ambulate without a wheelchair. *Id.* ¶ 10.

In any event, after Vanzant did not walk to the medical screening area, he was sent to segregated housing (Cell 78) for refusing to follow an order. Vanzant was transported to Cell 78 in a wheelchair, but he was not otherwise provided a wheelchair from

December 24 to December 31, 2014. *See id.* ¶ 9; *Vanzant Dec.*, Dkt. 106-5, ¶¶ 64-66.

The next day, December 25, Nurse Cassidy Barny visited Vanzant to determine if a wheelchair was necessary. Vanzant testified as follows regarding that visit:

> Q: So I'm going to ask you one more time: It's accurate that Ms. Barny had come to see you on December 25th –
>
> A: Right.
>
> Q: 2014, to determine whether or not a wheelchair was necessary; is that correct?
>
> A: Right.
>
> Q: And the assessment did not occur because you wanted to see a doctor; is that correct?
>
> A: Exactly.
>
> Q: And then you submitted another HSR on December 27th?
>
> A: Right.
>
> Q: So I guess I'll ask a little bit of different question. Why didn't you just allow the evaluation two days prior?
>
> A: I would have if they would have got me a doctor. I wanted a doctor to evaluate my knee. I didn't want no nurse, I didn't want no PA, I didn't want no MP, I wanted a doctor to come in an evaluate my knee. Because I figure I – to me, that would have been the best diagnosis – person to evaluate my knee at that time.

*Vanzant Dep.*, Dkt. 106-14, at 63:6 to 64:3; *see also id.* at 66:13-15 ("Q: Why didn't you allow a physical assessment on December 25th? A: Because I told them I wanted to see a doctor.").

On December 30, 2014, Vanzant slipped and fell while returning from the shower. The next day, he was seen by LPN Devin Jensen and PA Daniel Dellwo. PA Dellwo

evaluated him and prescribed a wheelchair. Vanzant was then moved to a wheelchair-accessible cell. He has had a wheelchair and has been housed in wheelchair-assessible housing since December 31, 2014.

## ANALYSIS

1. **The Eighth Amendment Claim**

Beginning with Vanzant's Eighth Amendment claim, the Magistrate recommends granting summary judgment in favor of defendants Craig, Ball, Egerman, Cole, Larsen, Reed-Rodriguez, and Corizon. The Court concurs with the Magistrate's analysis and recommendation and will therefore grant summary judgment in favor of these defendants.

The Report recommends denying summary judgment in favor of Medical Defendant Veronica Ferro. Ferro objects to this recommendation. The Court is not persuaded by the objection and will accept the Magistrate's recommendation. As explained, however, the Court's reasoning differs from the Magistrate's, and the claim that will proceed to trial is narrower than the Report envisions.

**A. Deliberate Indifference**

Ferro's first objection relates to the Magistrate's conclusion that a jury could find she was deliberately indifferent to Vanzant's serious medical needs and therefore violated the Eighth Amendment's proscription against cruel and unusual punishment. *See Report,* Dkt. 116, at 24.

The Eighth Amendment guarantees the right to adequate medical care in prison. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To prevail on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must show that: (1) he had a serious

**MEMORANDUM DECISION AND ORDER - 6**

medical need; and (2) the defendant's response to the need was deliberately indifferent. *Id.; Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

With respect to the first requirement, "[a] 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059-60 (citations omitted).

As for the second requirement, to establish deliberate indifference, "a person is liable for denying a prisoner needed medical care only if the person knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cty. of Washoe*, Nev., 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. Cty. of L.A.*, 833 F.3d 1060, 1077 (9th Cir. 2016). Furthermore, "[i]n order to know of the excessive risk, it is not enough that the person merely be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, he must also draw that inference." *Id.* at 1188 (internal modifications omitted). Thus, even "[i]f a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (citation omitted); *see also*

*Toguchi v. Chung,* 391 F.3d 1051, 1059 (9th Cir. 2004) ("there must be a conscious disregard of a serious risk of harm for deliberate indifference to exist").

The parties do not dispute that Vanzant has a serious medical need. They dispute whether Ferro acted with deliberate indifference. The Magistrate concluded that "Ferro's decision to insist upon a medical assessment, when she also possessed the ability to continue the prescription for the wheelchair, could be considered by a jury to constitute a failure to respond to Vanzant's pain and medical need for a wheelchair." *Report*, Dkt. 116, at 24.

The Court disagrees. To be sure, Ferro could have continued Vanzant's use of the wheelchair without an assessment, and in hindsight, that may have been the best course of action. But the question is not whether Ferro could have done something different or better, the question is whether her decision evidences deliberate indifference. *See, e.g., Simmons v. Navajo Cty.*, 609 F.3d 1011, 1019 (9th Cir. 2010) ("Although in hindsight, Nurse Jones may not have made the best or even the proper medical decisions, what is important for the analysis in this case is that her decisions do not evidence deliberate indifference."). Here, when Ferro decided to assess Vanzant, she had conflicting information: On the one hand (1) Vanzant had told Ferro he could not walk – even with crutches or a walker – without significant pain; (2) Vanzant arrived at the prison in a wheelchair and reports that he did not walk off the van into the building; and (3) Ferro knew Vanzant had been in a wheelchair for the past three months in the Ada County Jail. On the other hand, however: (1) an Ada County Jail employee had informed Ferro that Vanzant could walk and that he was faking it; (2) an IDOC correctional officer told Ferro

that Vanzant had walked the short distance from the transport van into the building that day;[1] and (3) Ferro had provided nursing care to Vanzant roughly one year earlier, and he had been able to ambulate without a wheelchair then.

There are no facts in the record suggesting Ferro is being untruthful about the information she had on December 24, 2014 when she decided to assess Vanzant's need for a wheelchair. To the contrary, Vanzant has alleged that Ada County employee Dave Wilcox did not like him and, for that reason, told IDOC employees Vanzant could walk. *See Am. Compl.,* Dkt. 42, at 2 ("Because Deputy Wilcox informed IDOC staff that I could walk, when I could not, IDOC staff removed my wheelchair from me . . . ."); *see also Vanzant Dep.* Dkt. 106-14, at 135:11-13 (although Vanzant did not personally hear Wilcox tell IDOC staff he could walk, he reported that IDOC security officers told him, "Officer Wilcox said you were faking it."). Likewise, the county jail records confirm that Ferro did, in fact, speak to an employee there regarding Vanzant before she decided to assess him.

Based on this record, the fact that Ferro did not simply continue the wheelchair prescription – even though she could have done so – does not show deliberate indifference. More to the point, under this set of facts, no reasonable juror could find that

---

[1] Vanzant disputes the underlying facts: He denies faking it, and he says he had not walked since before his incarceration at Ada County jail. But the Court does not consider this evidence for the truth of the matter asserted. Rather, the statements about Vanzant walking are relevant only to the extent they bear on Ferro's state of mind. The hearsay rule does not bar evidence "offered not to provide the truth of the matter asserted but . . . to show [a party's] state of mind." *United States v. Makhlouta,* 790 F.2d 1400, 1402 (9th Cir. 1986). Put differently, on summary judgment, the Court credits Vanzant's statements that he did not walk – either that day or earlier, while he was in in county jail – but there is still no dispute that Ferro had been informed – even if incorrectly – that Vanzant was capable of walking.

Nurse Ferro was deliberately indifferent to Vanzant's medical needs simply by requiring that he be assessed for a wheelchair.

The problem, however, is that Ferro effectively deprived Vanzant of a wheelchair without assessing him. That is, she insisted he walk the 25 feet to the medical screening area *before* completing her medical assessment. Even though she had conflicting information, which supported her decision to assess Vanzant, when it came time to perform that assessment, Vanzant told her he could not walk to the medical screening area – even with crutches or a walker – without significant pain. Nurse Ferro nevertheless persisted in her refusal to authorize a wheelchair. The ultimate result is that Nurse Ferro deprived Vanzant of a wheelchair, which he had used for the previous three months, without first completing a medical assessment to determine if he needed one.

Many cases have considered whether a prisoner may have sufficient medical need such that denying that prisoner a wheelchair could be deliberate indifference. *See, e.g, Navedo v. Maloney,* 172 F. Supp. 2d 276, 290 (D. Mass. 2001) (intentional denial of a wheelchair to someone who genuinely needs one could reasonably be viewed as a form of "unnecessary and wanton infliction of pain."). Under these authorities, "the failure to provide a wheelchair for an inmate may constitute deliberate indifference to a serious medical need in some circumstances." *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *see also Weeks v. Chaboudy*, 984 F.2d 185, 187-88 (6th Cir. 1993); *Cummings v. Roberts*, 628 F.2d 1065, 1068 (8th Cir. 1980)*; cf. LaFaut v. Smith,* 834 F.2d 389, 392-94 (4th Cir. 1987) (knowing failure to provide adequate toilet facilities to paralyzed wheelchair-bound prisoner violated Eighth Amendment). Here, while Nurse Ferro's

decision to assess Vanzant does not exhibit deliberate indifference, her decision to strip Vanzant of his wheelchair before he could be assessed could support such a finding. Ferro argues that this was merely a difference of opinion (*i.e.,* walker or crutches versus a wheelchair), but the problem is that she took away the wheelchair before she medically assessed him. So, viewing the facts in Vanzant's favor, there had been no assessment; thus, there could not yet be a difference of opinion on the appropriate medical diagnosis and treatment.

For these reasons, the Court will deny Ferro's motion for summary judgment on Vanzant's Eighth Amendment claim.

**B. Causation**

Any harm Vanzant suffered from Ferro's conduct shrinks to one day because the next day, December 25, 2014, Vanzant refused medical staff's attempt to assess him for a wheelchair. Vanzant's refusal interrupted the causal link between Ferro's conduct and Vanzant's alleged harm.

There are two types of causation, both of which must be satisfied for § 1983 plaintiffs to prevail: actual and proximate causation. *See generally Arnold v IBM Corp.,* 637 F.2d 1350, 1355 (9th Cir. 1981) (requiring but-for and proximate cause for § 1983 suits). Actual cause, sometimes referred to as cause-in-fact, or but-for causation, asks this question: But for Ferro's conduct, would Vanzant have suffered the alleged harm? Proximate cause, sometimes referred to as "legal cause," asks whether Ferro should be legally responsible for the type of harm Vanzant suffered. Also, the doctrine of superseding or intervening causation applies in § 1983 actions. *See, e.g., Van Ort v.*

*Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) (in § 1983 actions, the Ninth Circuit has looked to "[t]raditional tort law" to define "intervening causes that break the chain of proximate causation"). Thus, Ferro's conduct is not the proximate cause of Vanzant's alleged injuries if another cause intervenes and supersedes her liability for the subsequent events. *See id.* However, foreseeable intervening causes will not supersede the defendant's responsibility. *See id.*

Typically, the trier of fact will resolve causation. *See, e.g., Lemire v. Cal. Dep't of Corrections & Rehabilitation,* 726 F.3d 1062, 1080 (9th Cir. 2013); *White v. Roper*, 901 F.2d 1501, 1506 (9th Cir. 1990). But causation may be decided by the court when causation cannot be established on the basis of undisputed facts. *See Van Ort*, 92 F.3d at 837. And in this case, a critical fact related to causation is undisputed: Vanzant refused Nurse Barny's attempts to assess his need for a wheelchair on December 25, 2014. Given that undisputed fact, Vanzant cannot establish that Nurse Ferro's earlier denial of a wheelchair (or, more accurately, her insistence that he be assessed before Vanzant received a wheelchair) proximately caused Vanzant's alleged harms. Rather, his refusal interrupts the causal link between Ferro's conduct and any harm suffered after Nurse Barny visited Vanzant.

Under these circumstances, Vanzant's claim against Ferro will proceed to trial, but the potential damages period will shrink to roughly one day (December 24 to December 25).

**2. The ADA Claim**

Vanzant also alleges a claim under Title II of the Americans with Disabilities Act

against IDOC. The Magistrate recommended denying IDOC's motion for summary judgment on this claim. *See Report,* Dkt. 116, at 33. IDOC says this recommendation is flawed for various reasons, including these: First, IDOC contends that Vanzant cannot make out a prima facie ADA claim because any lack of accommodation was not due to Vanzant's disability, but was instead due to Vanzant's refusal to be assessed for a wheelchair. Second, IDOC contends that Vanzant's ADA claim for damages must be dismissed because the Magistrate concluded that IDOC employees were not deliberately indifferent to Vanzant in the context of ruling on his Eighth Amendment claim, yet failed to apply that finding to the ADA claim. Third, IDOC says the report is flawed because it did not address whether Vanzant is entitled to injunctive relief.

The Court is not persuaded by the first listed objection because it rests on the assumption that Vanzant refused to be assessed right from the beginning – on December 24, 2014. Vanzant, however, says he did not refuse assessment on that day, and the Court accepts his version of the facts on summary judgment. The Court is, however, persuaded by IDOC's second and third objections (as listed above), and will accordingly grant IDOC's motion for summary judgment on Vanzant's ADA claim.

### A. Relevant ADA Standards

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"), provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Although 42 U.S.C. § 12132 does not expressly provide for reasonable accommodations, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). The duty to provide "reasonable accommodations" or "reasonable modifications" for disabled people under Title II of the ADA arises only when a policy, practice or procedure discriminates on the basis of disability. *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 979 (9th Cir. 1997). A plaintiff accordingly bears the burden of establishing the existence of specific reasonable accommodations that the defendant public entity failed to provide. *See id*. at 978.

To prove that a public program or service violated Title II of the ADA, the plaintiff must show: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *see also Duvall v. County of Kitsap*, 260 F.3d 1124, 1134 (9th Cir. 2001).

## B. Special Requirements Applicable to a Damages Action

Damages are not available for a violation of Title II of the ADA absent a showing of discriminatory intent by the defendant. *See Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity. *Duvall,* 260 F.3d at 1138. Deliberate indifference requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. *Id.* at 1139. The first prong is satisfied when the plaintiff identifies a specific, reasonable and necessary accommodation that the entity has failed to provide, and the plaintiff notifies the public entity of the need for accommodation or the need is obvious or required by statute or regulation. *Id.* The second prong is satisfied by showing that the entity deliberately failed to fulfill its duty to act in response to a request for accommodation. *Id.* at 1139-40. The entity's duty is to undertake a fact-specific investigation to gather from the disabled individual and qualified experts sufficient information to determine what constitutes a reasonable accommodation, giving "primary consideration" the requests of the disabled individual. *Id.* The second prong is not satisfied if the failure to fulfill this duty to accommodate is a result of mere negligence, such as "bureaucratic slippage" or where the entity simply "overlooked" a duty to act. *Id.*

## C. Vanzant's Claim

In his prayer for relief, Vanzant seeks "[a]n injunction that prohibits handicapped inmates from being housed in non-handicapped cells" as well as "1 million Dollars in damages" from each defendant. *See Am. Compl.*, Dkt. 42, at 14. Vanzant's prayer for

**MEMORANDUM DECISION AND ORDER - 15**

relief does not seek nominal damages, and he has not argued that he wishes to pursue nominal damages only. Instead, he has insisted that IDOC employees were deliberately indifferent toward him and that he is therefore entitled to monetary damages.

But dealing first with Vanzant's request for injunctive relief, this request is moot because Vanzant was provided with a wheelchair and placed in wheelchair-assessible housing on December 31, 2014. *See Duvall,* 260 F.3d at 1132 n. 4.

Thus, at bottom, Vanzant's ADA claim is one for monetary damages. As noted above, the fact that this is an action for damages affects the showing that Vanzant must make because ADA plaintiffs can obtain damages only if they show that the defendant's conduct was deliberately indifferent to their rights under the ADA.

Here, in the context of ruling on Vanzant's Eighth Amendment claim, the Magistrate concluded that no reasonable juror could conclude that the IDOC defendants were deliberately indifferent toward Vanzant's medical needs. *See Report,* Dkt. 116, at 26-29. The same facts supporting this conclusion also support a conclusion that no reasonable juror could find IDOC *deliberately* failed to fulfill a duty to respond to Vanzant's request for accommodation. *See Duvall,* 260 F.3d at 1138-40. As noted in the Report, IDOC employees relied on the medical staff's judgment that Vanzant did not need a wheelchair. And when Vanzant asked for a wheelchair, IDOC employees did not simply fail to act; they advised Vanzant to work with medical staff to obtain a wheelchair. *See id.* at 27-28. Thus, there was not a deliberate, purposeful failure to respond to any duty to accommodate Vanzant. The Court will therefore grant IDOC's motion for summary judgment on this claim.

### 3. Vanzant's Objections

Lastly, the Court will address Vanzant's objections to the Report.[2] As a preliminary matter, the Court rejects Vanzant's objections to the extent that he proffers edits that are immaterial to the Report's analysis and conclusions as line-editing, which do not serve the purpose of 28 U.S.C. § 636(b)(1).

Vanzant makes five substantive objections to the Report. (Dkt. 119.) First, Vanzant objects to the Report's finding that he failed to show Corizon has a policy of inadequately staffing the RDU. *Id*. Vanzant argues that Corizon policy permitted LPNs to assess inmates for wheelchairs in violation of Idaho Code § 54-1402, which limits a LPN's scope of practice to assisting with assessments. *Id.*

Vanzant's argument is not compelling. Any claim that Defendants' actions violated state law is not cognizable in a section 1983 lawsuit. *See Huron Valley Hosp. v. City of Pontiac,* 887 F2d 710, 714 (6th Cir. 1989) ("[Section 1983] is thus limited to deprivations of federal statutory and constitutional rights. It does not cover official conduct that allegedly violates state law."). Further, the Report properly surmised that Vanzant failed to establish a Corizon policy of inadequate staffing that showed deliberate indifference to his medical needs. The applicable policies permitted LPN Ferro to continue his prescription for a wheelchair for seven days if he arrived in a wheelchair or had a prescription from the previous facility, or to assess his need and provide a

---

[2] The Court rejects the Medical Defendants' request that the Court to deny Vanzant's arguments as untimely because they were filed one day after the deadline.

**MEMORANDUM DECISION AND ORDER - 17**

wheelchair for five days until he could be seen by a NP or Doctor. *Ferro Dec.*, Dkt. 73-6, ¶ 8. If these policies had been applied, then Vanzant might have received a wheelchair at intake. There is no evidence in the record to support a finding that merely breaking with policy constitutes deliberate indifference.

Second, Vanzant objects to the Report's conclusion that Vanzant had not shown that Corizon had an inadequate pain management policy, specifically that Corizon had a policy of denying Dilaudid to inmates. In his objection Vanzant presents evidence already in the record and considered by the Magistrate. A Corizon employee writing that he would not be prescribed Dilaudid while incarcerated on one of his medical grievance forms is not evidence of a Corizon policy amounting to inadequate pain management. The record reflects that Vanzant was prescribed various medications to address his pain including Tylenol #4, which he refused to take as prescribed. The record also reflects Corizon medical staff attended to Vanzant's pain, although not in the way he desired.[3]

Third, the Court rejects Vanzant's three objections to the Report's dismissal of Vanzant's arguments that *Balla* supported his Eighth Amendment claims. Vanzant contends that "Defendants' failure to comply with specific and definite requirements under *Balla* may be used by [him] as evidence that Defendants were deliberately

---

[3] Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *see also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) ("[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health.").

indifferent to Vanzant's serious medical needs in violation of the 8th Amendment." (Dkt. 119.) However, contrary to Vanzant's argument that he is not relying on *Balla* for the truth of the matter asserted, the only way for the Court to apply *Balla* in this way would be to accept that the policy requirements Vanzant claims *Balla* stands for are true and were applicable to the RDU at the time of Vanzant's intake. The Court will not do so. Vanzant cannot "challenge, in this case, a failure to comply with a court order in a different case." *Campbell v. Yordy*, 2016 WL 7256812, at *6 (D. Idaho 2016).

Vanzant also filed a Motion to Take Judicial Notice asking the Court to take judicial notice of the *Balla* records and filings under Federal Rules of Evidence 201, 401, and 402. (Dkt. 121.) Vanzant argues that he is not seeking to offer those documents for the truth of the matter asserted, but the Court finds to the contrary. As such, the Court denies the Motion to Take Judicial Notice.

## ORDER

**IT IS ORDERED that:**

(1) The Report and Recommendation (Dkt. 116) is **ACCEPTED AND ADOPTED IN PART** and **REJECTED IN PART**, as explained above.

(2) IDOC's Motion for Summary Judgment (Dkt. 70) is **GRANTED.**

(3) The Medical Defendants' Motion for Summary Judgment (Dkt. 73) is **GRANTED IN PART and DENIED IN PART** as follows:

    a. Defendant Veronica Ferro's Motion for Summary Judgment on Vanzant's Eighth Amendment claim is denied.

    b. The motion is granted in all other respects.

(4) Plaintiff's Motion to Take Judicial Notice (Dkt. 121) is **DENIED**.

DATED: March 26, 2018

B. Lynn Winmill
Chief U.S. District Court Judge